GLENS FALLS INSURANCE COMPANY *v.* JENKINS.

Opinion delivered December 7, 1925.

1. INSURANCE—PROOF OF LOSS—WAIVER OF OBJECTION.—Where written proof of loss under a fire insurance policy was submitted two days after a fire on a printed blank and complying with the insurer's requirements, except that it included property not insured, and failed to itemize the property destroyed, failure of the insurer's adjuster to object to such proofs until after the time for filing had expired constituted a waiver of the defense that the proofs were not filed in time.

2. INSURANCE—CONDITION AS TO OWNERSHIP.—A condition in an insurance policy regarding the unconditional ownership of the insured property applies only to property covered by the policy, and testimony as to liens on property not insured was irrelevant.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict on conflicting evidence is conclusive.

4. EVIDENCE—STATEMENT OF CONSPIRATOR.—In an action on a fire insurance policy, where the issue was whether plaintiff and another conspired to burn the building, testimony of a witness that she saw plaintiff hand the alleged conspirator something which looked like paper, and that the conspirator later stated that "if he could get his deal pulled off he would have money to throw to the birds" was incompetent as not connecting defendant or stating any fact in a transaction between plaintiff and the conspirator.

5. EVIDENCE—COMPETENCY.—In an action on a fire insurance policy, where the issue was whether plaintiff and another conspired to burn and did burn the insured building, proof that a third party, who was financially unable to do so, did put up a cash bail for such conspirator, was incompetent, where there was no testimony tending to show that plaintiff furnished the money.

6. INSURANCE—STIPULATION AS TO FALSE REPRESENTATIONS.—Stipulation in a fire insurance policy against false swearing and false representations relate only to the insured property, and not to property not covered by the policy.

7. TRIAL—TIME OF RAISING QUESTION.—In a suit on a fire insurance policy, where the clause limiting the recovery of plaintiff to three-fourths of the value was not pleaded by the defendant, and it applied only to his personal property, and the description of the insured property in the policy did not show whether the property was chattels or fixtures, the court properly refused to permit the question of the three-fourths clause to be raised for the first time after the close of the evidence.

Appeal from Little River Circuit Court; *B. E. Isbell*, Judge; affirmed.

*Webber & Webber,* for appellant.

*Shaver, Shaver & Williams* and *Moore, Walker & Moore,* for appellee.

McCULLOCH, C. J.    The plaintiffs, C. N. Jenkins and J. W. White, operated a motion picture theatre in the city of Helena, and owned certain property in connection with the building and business. They carried fire insurance with several companies, and, among others, the defendant, Glens Falls Insurance Company, in the sum of $3,500 on the property described in the policy as follows: "On improvements and betterments to the building described herein, the insured part being the ground floor, occupied by a first-class moving picture theatre, known as the Best Theatre. These improvements and betterments consist principally of floors, ceiling, side wall, balconies, stairs, doors, windows, partitions, lattice work, ticket office, and theatre front, and all other improvements and betterments to the building which were made and paid for by the assured, all while contained in the three-story, composition roof, brick building situated 512 east side of Cherry Street, block 18, page 14, Sanborn's map of the city of Helena, Arkansas."

The policy contained what is known as a "three-fourths value clause" reading as follows: "Applicable to personal property only; it is understood and agreed to be a condition of this insurance that in the event of loss or damage by fire to the property insured under this policy this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured by this policy (not exceeding the amount insured on each item) at the time immediately preceding such loss or damage." The policy also contained the customary clause, as a condition of liability, that proof of loss should be made within sixty days after date of the fire. The property was destroyed by fire, and, upon refusal by the defendant to pay, plaintiffs instituted this action on the policy.

Defendant filed an answer denying liability on several grounds, namely, that proof of loss had not been made within the time prescribed in the policy; that there was a breach of the terms of the policy by plaintiffs in that their interest in the property was not sole and unconditional; that there was a breach on account of incumbrance on the insured property; and also that there was no liability by reason of the fact alleged that plaintiffs wilfully caused the property to be burned for the purpose of collecting the insurance.

The trial before a jury resulted in a verdict in favor of plaintiffs for the recovery of the sum of $2,100, and the defendant has prosecuted an appeal to this court.

Within two days after the fire, the plaintiffs sent to the company what purported to be proof of loss in accordance with the terms of the policy. The proof was made out on a printed blank purporting to be a proof of loss. It contained a long list of articles destroyed in the building which were not covered by the policy, and the only description of property insured was under one item, as follows: "Loss to walls, ceilings, fans and fixtures not mentioned above, $2,311.50." The proof was received by defendant's authorized adjuster, who made no response or objection until after the expiration of the sixty days for furnishing proof of loss, when he wrote to appellees and informed them that the proof was unsatisfactory, and defendant then denied liability on the ground that proof had not been made during the time provided in the policy.

Counsel for defendant recognize in their argument the force of the decisions of this court, as well as other courts, that where an insured furnishes to the insurer within the time stipulated by the policy what purports to be a proof of loss, and which is evidently intended to be a compliance with the policy, it is the duty of the insurer to seasonably make objections thereto, if any found, and that a failure to do so will constitute a waiver. *Hartford Fire Ins. Co.* v. *Enoch,* 79 Ark. 475; *American Ins. Co.* v. *Haynie,* 91 Ark. 43; *Business Men's Accident Associa-*

*tion* v. *Cowden*, 131 Ark. 419. But it is contended that the instrument of writing delivered to defendant was not made in good faith as a proof of loss, and did not purport to be a compliance with the policy, so as to challenge the attention of the adjuster and call for objections to discrepancies. We cannot agree with this contention, for the alleged proof was made out on a printed form which expressly purported on its face to be a proof of loss under the designated policy, and it complied with all the requirements except as to itemizing the property destroyed. The attention of the adjuster was necessarily called to the fact that the insured was attempting to comply with the policy, and, if the same was unsatisfactory and incomplete, it was the duty of the adjuster to call attention of the insured to that fact and to specify the defects. It was too late to do that after the time for preparing the proof had expired, unless an extension of time was given for that purpose.

It is also contended that evidence offered by defendant would have shown that there was a breach of the terms of the policy by reason of the fact that plaintiffs were not the unconditional owners of the insured property, but that, on the contrary, the property was covered by a chattel mortgage. The offered evidence did not tend to show that the property covered by this policy was incumbered by any mortgage or lien, but that other property in the building owned by plaintiffs was so incumbered. The condition in the policy in regard to unconditional ownership and against liens applied only to property covered by the policy, hence there was no error in excluding testimony in regard to other property not covered.

The principal defense offered in the trial of the case was that J. W. White, one of the plaintiffs, hired a man named H. L. Keener to burn the building, so that the insurance could be collected, and that Keener set fire to the building during the night time, pursuant to his agreement with White. The defendant introduced testimony tending very strongly to establish those facts.

It is undisputed that Keener set fire to the building, and he was introduced as a witness by the defendant, and testified that White hired him to burn the building. Keener's narrative on the witness stand was that he was living in Texarkana with a man named Petty and had known White for several years; that White came to see him at the tent where he and the Pettys were living and proposed to hire him to burn the theatre building in Helena. He stated that when White came to see him he got in a closed automobile with White, and they drove around two or three hours, and then came back to the Petty tent, and that he got out there in the presence of Petty and his wife. He testified also that Petty's stepson, Willie Satterfield, was present when he and White made the trade to burn the theatre, and that White first gave him a dollar to buy a ticket to New Boston, and that later he met White in New Boston and got some more money from him, about thirty dollars, to use in paying the expense of the trip to Helena. He testified that he burned the building as directed and was arrested and afterwards pleaded guilty; that, while he was in jail in Helena with a man named Morris, who was let out on bond, he told Morris to get in touch with White and tell White to make his bond for him, and that in about two months there was a deposit of cash in lieu of bond. The sheriff testified that, after Morris got out of jail, he came back and put up a deposit of $1,000 for Keener's bond. Petty and wife and Satterfield were each introduced as witnesses by defendant, and they corroborated Keener's statement. They testified that they saw Keener and White sitting in the car together in close conversation and saw White hand money to Keener.

White testified as a witness, and denied the whole story about his hiring Keener to burn the theatre, and stated that he was not acquainted with Keener, and had never seen him until he met him in Helena at the time of this investigation. He also denied that he had made bond for Keener or furnished the money which Morris

put up in lieu of bond. Other witnesses introduced by plaintiffs tended to establish contradictory statements on the part of Petty and Satterfield.

The issue concerning the destruction of the property by plaintiffs as alleged in the answer was submitted to the jury on proper instructions, and there was evidence sufficient to sustain the verdict. We must treat the issue therefore as being settled in favor of plaintiffs.

Mrs. Petty, when introduced as a witness by defendant, testified that she had known Keener for several years, that he lived with her and her husband in a tent in the outskirts of Texarkana, and that she saw Keener and White together on the occasion described by Keener, which was late in the evening on a certain day just before the theatre in Helena was burned; that she saw White hand Keener something which "looked like paper," but she could not tell precisely what is was; that White left there, and Keener came into the tent for supper. The defendant proposed to prove by her that after supper Keener said that he was going away, and that "if he could get his deal pulled off he would have money to throw to the birds." This testimony was excluded, and defendant saved exceptions, and urges the ruling now as grounds for reversal. We do not think that the statement, in the form it was made by the witness, was competent. Conceding that the declaration of Keener as a co-conspirator with White was competent evidence against both of the plaintiffs, this declaration does not connect White with it or purport to state any fact in the transaction between White and Keener. It was merely a declaration of Keener's that "if he could get his deal pulled off, he would have money to throw to the birds." Later, when witness Satterfield was put on the stand and testified substantially to the same facts with reference to what transpired on the occasion mentioned between Keener and White, he was asked to state what declaration or statement Keener made as to what occurred between him and White, and the witness replied that Keener said on his return from the machine where

White and Keener were sitting, that "he had made a deal with White and when he carried out the deal he would have money to throw to the birds, or words to that effect." The court admitted this statement for the obvious reason that it was a declaration by Keener as to what had occurred between him and White. It is altogether different from the declaration sought to be proved by Mrs. Petty. We think there was no error committed by the court in excluding Mrs. Petty's testimony on this subject.

Again, it is insisted that the court erred in refusing to allow defendant to prove by the sheriff of Phillips County, and another witness residing at Helena, what the financial condition of Morris was, as tending to establishing the fact that he did not put up the $1,000, and some one else must have furnished it. This testimony had no tendency to establish the fact that White furnished the money to Morris; in fact, there was no competent testimony at all introduced tending to show that White furnished the money. The jury would have had no right to infer, from the fact that Morris' financial condition did not admit of his putting up the money himself, that White had furnished the money. There was no error therefore in excluding this testimony.

There is a further contention that the court erred in excluding testimony with respect to the value of other property contained in the proof of loss. The contention is that this constituted false pretenses, which, under the terms of the policy, constituted a breach and absolved the insurer from liability. The offered testimony related entirely to property not included in the policy. The stipulation in the policy against false swearing and false pretenses relates to the insured property, and not to any other, hence any representation or statement as to the value of the other property was immaterial.

Finally, it is insisted that the court erred in refusing to give instruction No. 10, requested by the defendant, limiting the recovery of the plaintiffs to three-fourths of the value. This is the first time that the ques-

tion concerning the three-fourths value clause has arisen in the proceedings. There was no reference to this clause in the answer, and, since it was not pleaded in the answer, it was too late to raise the question in the court's charge to the jury. This clause of the policy applied only to personal property. The description in the policy of the insured property did not show on its face whether the property was of the character of chattels or fixtures, so in order to raise that question for the application of the three-fourths value clause it was necessary to plead it. The court was correct, therefore, in not permitting the question to be raised for the first time after the introduction of the evidence had been closed, and the instructions to the jury being considered. Judgment affirmed.